SECURITIES AND EXCHANGE
COMMISSION, Plaintiff

v.

PRUDENTIAL SECURITIES
INCORPORATED,
Defendant.

Civil Action No. 93–2164 (EGS).

United States District Court,
District of Columbia.

March 26, 1997.

Graeme W. Bush, Caplin & Drysdale, Chartered, Washington, DC, for Plaintiffs/Intervenors.

Stephen J. Crimmins, Securities and Exchange Commission, Washington, DC, for S.E.C.

Arthur F. Mathews, Wilmer, Cutler & Pickering, Washington, DC, for Defendant.

Joel Brenner, Storch & Brenner, Washington, DC, for Claims Administrator.

## OPINION & ORDER

SULLIVAN, District Judge.

This matter is before the Court on the motion of John H. Lomax, Ann D. Lomax, Emory C. Camp and Dr. Robert Callewart ("proposed intervenors") to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, for permissive intervention pursuant to Federal Rule of Civil Procedure Rule 24(b). For the following reasons, the proposed intervenors' motion to intervene is **DENIED**.

## I. BACKGROUND

The Securities and Exchange Commission ("SEC") commenced this action in October 1993, charging Prudential Securities Incorporated ("Prudential") with violation of a 1986 SEC order [1] and with additional violations in connection with the sale of limited partnership units and other so-called direct investment products between 1980 and 1990. SEC alleged that limited partnership interests were offered and sold to persons for whom such investments were not suitable in light of their stated investment objectives, financial status, investment sophistication and other factors. The suit also alleged that misrepresentations and omissions of material facts were made regarding the present and future value of assets owned by the limited partnerships, the nature of the businesses owned or to be operated by them, or the projected profitability of such investments.

Prudential consented to a final court order which was entered on October 21, 1993. Under the final order Prudential agreed to an apparently unprecedented Claims Resolution Process to resolve individual investors claims arising out of Prudential's offer and sale of more than 760 limited partnerships to about 340,000 investors over an eleven year period. As part of the process, Prudential agreed not to assert the defense that the claims were time-barred, and further agreed that the amount of Prudential liability would remain totally uncapped. Prudential made an initial payment into a payment fund of $330 million (an additional $330 million deposit was made later in the claims process). Irving Pollack, a former SEC commissioner and director of the SEC Enforcement Division, was appointed as Claims Administrator.

Under the Claims Resolution Process, an investor could submit claims to Prudential for evaluation. Prudential could then either make a fair money offer to resolve the claim, or it could reject the claim for lack of merit. If an investor declined to accept Prudential's settlement offer, or if Prudential rejected the claim, the investor could elect to submit the claim to binding expedited arbitration before arbitrators appointed and supervised by the Claims Administrator. Until either accepting a settlement offer or submitting to binding arbitration, the investor remained free to pursue any available remedies outside of the claims resolution process.

Through the claims resolution process, over 100,000 investors—many of whose claims had been time-bared—have received almost one billion dollars. Prior to the filing of this motion to intervene on August 1, 1996, the settlement process was scheduled to be completed on or about October 20, 1996.

### Allegations of Miscalculation in Damage Awards. [2]

Proposed intervenors' complaint in intervention is based on allegations that Prudential miscalculated investors' damage awards, which were used to determine the appropriate settlement offer. Intervenors claim that Prudential miscalculated the tax benefits claimants were to receive. They claim that contrary to Prudential's representations and agreements, Prudential's damage calculations have not taken full account of tax effects that reduce allowable damages under the claims process, while disregarding offsetting tax consequences of an investment that would increase damages. Further, proposed intervenors claim that Prudential has failed to account for offsetting tax costs in calculating damages by (1) refusing to take into account the tax consequences of payments to claimants, and (2) not accounting for recapture of tax benefits previously realized by claimants

---

1. The 1986 SEC order was issued after a finding by SEC that certain Prudential employees had violated the federal securities laws and that Prudential had failed to adequately supervise its employees. *In the Matter of Prudential–Bache Securities, Inc.,* Admin. Pro. File No. 3–6600 (Jan. 2, 1986), and *In the Matter of Prudential–Bache Securities, Inc., Sam Kalil, Jr., John Solomon, and James More,* Admin. Pro. File No. 3–6601 (Jan. 2, 1986).

2. The Court notes that "[a]n application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Williams & Humbert Ltd. v. W & H Trade Marks,* 840 F.2d 72, 75 (D.C.Cir.1988). Thus, the parties' arguments on the merits of the proposed intervenor' claims will have no bearing on the Court's determination of whether intervention of right is proper.

in its initial calculation of maximum possible awards.

Prudential and SEC respond that with respect to proposed intervenors' payments claim, the Claims Administrator reasonably exercised the discretion granted to him by the consent decree when he did not require Prudential to "gross-up" or take into account the tax consequences of its payments. With respect to proposed intervenors' recapture argument, Prudential and SEC claim that in computing the net tax benefits, Prudential did in fact take into account the tax consequences of investment disposition, including those variously referred to as "tax recapture," "phantom income," or "negative capital account."

## II. ANALYSIS

### A. Section 21(g) of the Securities Exchange Act of 1934

■ SEC, and to a lesser extent Prudential, argue that the proposed intervenors' motion to intervene should be denied pursuant to section 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(g), which bars the "consolidation and coordination" of an enforcement action brought by the SEC with a private action. Section 21(g) provides as follows:

Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g).

It is undisputed that section 21(g) bars the "consolidation and coordination" of an enforcement action brought by the SEC with a private action. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17, 99 S.Ct. 645, 652 n. 17, 58 L.Ed.2d 552 (1979) ("[C]onsolidation of a private action with one brought by the SEC without its consent is prohibited by statute. 15 U.S.C. 78u(g)"). Proposed intervenors argue, however, that this provision is inapplicable to this case because the intervenors are not seeking to "consolidate or coordinate" any other action with the action instituted by the SEC. Proposed intervenors are essentially seeking to intervene to ensure that Prudential complies with the consent decree in calculating the damage awards. They claim that section 21(g) does not bar intervention under the circumstances of this case. The Court agrees.

While there is significant authority which suggests that section 21(g) bars all private cross-claims,[3] counter-claims,[4] and third-party claims[5] to SEC enforcement actions to which SEC does not consent, there is no persuasive authority which suggests that section 21(g), likewise, bars *intervention* in all SEC enforcement actions.[6] Indeed, there is

---

3. *SEC v. Thrasher*, 1995 WL 456402 (S.D.N.Y. Aug.2, 1995); *SEC v. Downe*, 1994 WL 67826 (S.D.N.Y. March 3, 1994); *SEC v. Allison*, [1981–1982 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 98,263, at 91,703, 1981 WL 1667 (N.D.Cal. Aug. 7, 1981) (holding that cross-claims are expressly prohibited by section 21(g)).

4. *SEC v. Sprecher*, 81 F.3d 1147, 1996 WL 175216 (D.C.Cir. Apr.9, 1996) (denying counterclaim based on section 21(g)); *SEC v. Randy*, 1995 WL 616788 (N.D.Ill. Oct.17, 1995) (counterclaim impermissible under 21(g)); *SEC v. The Electronics Warehouse, Inc.*, 689 F.Supp. 53, 71–72 (D.Conn.1988) (counterclaim in Commission enforcement action "barred" by Section 21(g)); *SEC v. American Free Enterprise Institute*, 580 F.Supp. 270, 272 (D.Ariz.1984) (counterclaim in Commission enforcement action dismissed under, inter alia, Section 21(g)), aff'd, 891 F.2d 457 (2d Cir.1989), cert. denied, 496 U.S. 942, 110

S.Ct. 3228, 110 L.Ed.2d 674 (1990); *SEC v. Lorin*, 1991 WL 155767 *1 (S.D.N.Y. Aug. 7, 1991) (Section 21(g) is a "bar" to counterclaims in Commission enforcement actions).

5. *SEC v. Thrasher*, 1995 WL 456402 (S.D.N.Y. Aug.2, 1995) (Section 21(g) bars third-party claims in SEC actions seeking both equitable relief and civil penalties); *SEC v. Bradt*, 1995 WL 215220 (S.D.Fla. Mar.7, 1995) (holding that section 21(g) precludes defendant from bringing third-party claims without the consent of the SEC); *SEC v. Egan*, 821 F.Supp. 1274, 1276 (N.D.Ill.1993) (defendants could not overcome the "absolute prohibition imposed by Section 21(g)" against filing of a third-party complaint in a Commission enforcement action).

6. SEC and Prudential rely on *SEC v. Wozniak*, No. 92–4691, 1993 WL 34702 (N.D.Ill. Feb. 5, 1993), an unpublished, Northern District of Illi-

case law which indicates that intervention in SEC enforcement actions, even absent SEC consent, may be appropriate in some cases.

In *SEC v. Flight Transportation Corp.*, 699 F.2d 943 (8th Cir.1983), the Eighth Circuit allowed a creditor and the wife of one of the defendants to intervene in an SEC enforcement action against a corporate debtor and its president. In permitting intervention, the court noted that section 21(g) "does not say that no one may intervene in an action brought by the SEC without its consent [or even] mention Fed.R.Civ.P. 24." *Id.* at 950. The court further noted that "Rule 24 [does not] contain any clause giving special privileges to the SEC." *Id.; see also SEC v. Navin*, 166 F.R.D. 435 (N.D.Cal.1995) (allowing intervention under Fed. R. Civ. Proc. 24(a) in an SEC enforcement action).

In *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980), the District of Columbia Circuit has also suggested that intervention in SEC enforcement actions may, in some cases, be appropriate. In *Dresser*, the court upheld enforcement of an SEC subpoena for documents that had also been the subject of a grand jury subpoena. One issue addressed by the court was the district court's denial of a motion to intervene by an employee of the defendant who was seeking intervention to protect his confidentiality interest in the subpoenaed documents. The court found that the district court inappropriately denied the motion to intervene based on the merits of the movant's underlying claim. The court, nevertheless, affirmed the district court's denial of the motion to intervene based on its finding that the employee's interests where adequately represented at the current stage of the litigation. In affirming the district court's denial of the motion to intervene, the court stated that it did so only "[o]n the understanding that [plaintiff could] seek to intervene in future SEC proceedings.. and that the SEC and the courts [would] evaluate any such motions to intervene afresh and on their merits. . . ." *Id.* at 1390. The Court notes that the circuit did not affirm the district court's denial of the intervention motion based on a finding that intervention in SEC enforcement actions absent SEC consent is prohibited under section 21(g), but rather engaged in a Rule 24(a) analysis and considered whether the movant's interests were adequately protected. Thus, *Dresser* appears to supports the conclusion that intervention in SEC enforcement actions where SEC does not consent is not automatically barred under section 21(g) in all cases.

■ Even assuming that section 21(g) may bar non-consensual intervention in some SEC actions, the Court finds that application of that provision is not appropriate in this case. Congress enacted section 21(g) to promote the effective enforcement of federal securities laws by ensuring that the SEC would not be required to litigate the separate issues of private parties during SEC litigation "even though [the private] actions may involve common questions of fact." 15 U.S.C. § 78u(g). Congress was concerned that coordination and consolidation of private actions, particularly multidistrict litigation, would hamper enforcement of the federal securities laws because consolidation or coordination of separate, albeit related, issues might "increas[e] the need for extensive pretrial discovery," S.Rep. No. 94–75, at 76 (1975), reprinted in 1975 U.S.C.C.A.N. 179, 254, or make an "already complicated securities case[ ] more confused and complex," S.Rep. No. 75, at 76 (quoting *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972)).

The Senate Committee also determined that SEC enforcement actions should not be litigated in conjunction with private actions because the purpose of the SEC action and the purpose of private actions might be different. *Id.* The committee noted that "[p]rivate actions for damages seek to adjudicate a private controversy between citizens; the Commission's action for civil injunction is a vital part of the Congressionally mandated scheme of law enforcement in the securities area." *Id.*

nois opinion to support their position that section 21(g) precludes intervention in SEC enforcement actions. The Court is not persuaded by *Wozniak.*

The SEC instituted this action and addressed all SEC charges without interference from private parties. As noted by SEC in its opposition to the motion to intervene, the final order was entered on October 21, 1993, "thus resolving all of the SEC's charges." SEC Opp. at 3. In light of the prosecution of this action by SEC, without any interference from private parties, the primary concerns of Congress that led to its enactment of section 21(g) were not implicated here.

The motion to intervene pending before the Court arises not out of actions of the parties during the litigation or prosecution phase of the suit, but rather arises out of actions during implementation of the consent decree. The Court is not aware of any authority which suggests that Congress intended section 21(g) to prevent intervention during post-judgement proceedings. *See SEC v. Navin,* 166 F.R.D. 435 (N.D.Cal.1995) (allowing intervention under Fed. R. Civ. Proc. 24(a) in an SEC enforcement action where a final order and consent decree had been entered, but with no discussion of section 21(g) which was apparently not raised by the SEC). Because intervention at this stage of the action will not hamper SEC's efforts to enforce the federal securities laws, the Court does not view section 21(g) as applicable in this case.

Moreover, the purpose for which proposed intervenors seek intervention, i.e., to assure compliance with the consent decree, is not at odds with SEC's purpose during this stage of the action. Further, intervention in this case is sought by individuals who are or were involved in the claims resolution process. While SEC argues that intervention will increase the number of parties to the action, the Court is persuaded that the proposed intervenors, and the proposed class members, are already de facto "parties" to the claim resolution process.

The Court acknowledges that intervention at this point in this case will undoubtedly prolong the claim resolution process. However, a prolonged claim resolution process does not justify the application of section 21(g), where, in the Court's view, the provision was not intended to apply.

Having concluded that section 21(g) does not bar intervention in this case, the Court will now address whether the proposed intervenors have satisfied the requirements of Federal Rule of Civil Procedure 24(a)(2) for intervention as a matter of right.

**B. Federal Rule of Civil Procedure 24(a)(2)**

Federal Rule of Civil Procedure 24(a)(2) provides in relevant part:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). There are essentially four requirements for intervention of right: (1) timeliness; (2) cognizable interest; (3) impairment; and (4) lack of adequate representation. *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,* 840 F.2d 72, 74 (D.C.Cir.1988); see also *Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C.Cir. 1986).

The primary issue in this case regarding intervention under Rule 24 is whether proposed intervenors have a protectable interest in this action. Prudential and SEC argue that the proposed intervenors do not have a protectable interest in this action because they have no right to enforce the consent decree under *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Proposed intervenors respond that they are not seeking to enforce the consent decree, but rather are "seek[ing] to enforce the independent promises and representations that induced them to submit their claims to the Court-ordered settlement and arbitration processes and to obtain payment from the Court supervised Settlement Fund." Reply at 19. Proposed intervenors further contend that they are "seek[ing] to enforce the legal right arising from their agreement with Prudential formed

when they submitted to the resolution process." *Id.* at 20.

Although proposed intervenors' claim that they are not seeking to enforce the consent decree, the actions they complain of arise out of alleged noncompliance with the consent decree. Indeed, proposed intervenors specifically allege in their pleadings that Prudential has not complied with the consent decree.[7] In the Court's view, proposed intervenors claim of miscalculated damage awards are inextricably intertwined with their claim of noncompliance with the consent decree. Accordingly, proposed intervenors are seeking to enforce the consent decree. The Court must therefore determine whether they are precluded from doing so under the *Blue Chip* line of cases.

In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), a private beneficiary sought to enforce a consent decree in a case in which the government was the plaintiff. The Supreme Court held that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Id.* at 750, 95 S.Ct. at 1932. At least one circuit has interpreted this case broadly, denying third parties' request to enforce consent decrees in all cases. *See, e.g., Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir.1994) (en banc) ("The plain language of *Blue Chip* indicates that even intended third-party beneficiaries of a consent decree lack standing to enforce its terms.")

The D.C. Circuit, however, has interpreted *Blue Chip* more narrowly. In *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C.Cir. 1993), the court, proceeding under the theory that the Supreme Court had not intended to eviscerate Rule 71[8] in *Blue Chip*, concluded that "because [the movants were] direct beneficiaries of a trust created by the Consent Decree," they may sue to enforce it. *Id.* at 286; *see also Hook v. State of Arizona Dep't of Corrections*, 972 F.2d 1012, 1014–15 (9th Cir.1992) ("[I]ntended third party beneficiaries of a consent decree have standing to enforce the decree. . . . [*Blue Chip*] prohibits only incidental third party beneficiaries from suing to enforce a consent decree."); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir.1985) ("[W]e think that (*Blue Chip*) was not intended to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure.").

While the D.C. Circuit has interpreted *Blue Chip* narrowly, the court's interpretation is not so narrow that it will allow proposed intervenors to enforce the consent decree at issue here. The *Beckett* court stated "that third party beneficiaries of a Government contract *are generally assumed to be merely incidental beneficiaries, and may not enforce the contract absent clear intent to the contrary.*" *Id.* at 288 (emphasis added). The court went on to state that "[o]nly the Government can seek enforcement of its consent decrees; therefore, even if the Government intended its consent decree to benefit a third party, that party could not enforce it unless the decree so provided." *Id.* (citing *Dahl, Inc. v. Roy Cooper Co., Inc.*, 448 F.2d

---

7. In their pleadings in support of their motion to intervene, proposed intervenors make the following statements:

Jurisdiction. This Court has supplemental jurisdiction over the complaint in intervention under 28 U.S.C. § 1367(a), and pursuant to paragraph XIV of the Order, which provides that the Court "shall retain jurisdiction of this action for all purposes, including implementation and enforcement of the FINAL ORDER."
Complaint at 3.
This motion is brought on the grounds that:(1) defendant Prudential Securities Incorporated ('Prudential') has failed to comply with the Consent Decree. . . .
Mot. to Interv. at 2.

Contrary to the requirements of this Court's consent Decree and Prudential's representations and agreements, Prudential has [miscalculated the damage awards]
Mem. in Supp. of Mot. to Interv. at 1–2.

8. Rule 71 provides as follows:
Process in Behalf of and Against Persons not Parties. When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party.
Fed.R.Civ.P. 71.

17, 20 (9th Cir.1971)); *see also Hook*, 972 F.2d at 1015 ("The holding in *Blue Chip Stamps* is thus limited to incidental beneficiaries or beneficiaries of consent decrees where the government was the plaintiff. . . . ").

Proposed intervenors argue that this language regarding government consent decrees is merely dicta and urges the Court to view them as intended beneficiaries much like the intervenors in *Beckett*. However, this Court cannot ignore the D.C. Circuit's interpretation of Supreme Court precedent, nor can the Court ignore the fact that proposed intervenors are seeking to enforce a consent decree to which the government is a party. In interpreting *Blue Chip*, this circuit clearly indicated that consent decrees where the government was a party could not be enforced by third parties absent consent from the government, even if the third party was an intended beneficiary. *Beckett*, 995 F.2d at 288. The circuit reiterated this rule in *Rafferty v. NYNEX Corp.*, 60 F.3d 844 (D.C.Cir.1995), where it held that the plaintiff in that case "[could not] sue to enforce the consent decree [because] [u]nless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the decree can seek enforcement of it." *Id.* (citing *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C.Cir.1993)). In the Court's view, *Blue Chip* and this circuit's interpretation of *Blue Chip* requires the Court to conclude that the proposed plaintiff-intervenors may not enforce the consent decree in this case, unless the government so intended.

In determining whether the government intended third parties to enforce a government consent decree, the Court must look to the language of the consent decree itself. *Beckett*, 995 F.2d at 288. In the present case, the unambiguous language of the consent decree clearly establishes that the gov-

ernment did not intend for third parties to enforce the consent decree.[9] Thus, the Court concludes that proposed intervenors cannot enforce the consent decree here. *See Hook*, 972 F.2d at 1015. ("Because the Government [in the *Blue Chip* case] knew at the time it entered the consent decree that the private beneficiaries it intended to benefit would be unable to bring actions to enforce the consent decree, the private beneficiaries were only incidental third party beneficiaries."). Because the proposed intervenors cannot enforce the consent decree in this case, they may not intervene as a matter of right under Rule 24(a)(2). For the same reason, the Court must also deny proposed intervenors' request for permissive intervention under Rule 24(b).

### III. CONCLUSION

Intervenors' motion to intervene is DENIED.

---

9. Paragraph IX of the Consent Order provides that:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that nothing herein shall be deemed to confer standing upon any persons other than plaintiff COMMISSION, defendant PSI and the CLAIMS ADMINISTRATOR.

Paragraph IX of the Consent Order provides that:

Except as explicitly provided in this Final Order and the consent, nothing herein is intended to or shall be construed to have created . . . any . . . rights [in] any person whomsoever, other than as between the Commission and PSI, in accordance with the consent.