SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

KINGS REAL ESTATE INVESTMENT TRUST, et al., Defendants,

and

Brighton Enterprises, Inc., et al., Relief Defendants.

No. 04–4006–RDR.

United States District Court, D. Kansas.

June 30, 2004.

Timothy P. Davis, Securities & Exchange Commission, Ft. Worth, TX, for Plaintiff.

Roger N. Walter, Morris, Laing, Evans, Brock & Kennedy, Topeka, KS, William Perry Brandt, Berkowitz, Stanton, Brandt, Williams & Shaw LLP, Kansas City, MO, James L. Eisenbrandt, Berkowitz, Stanton, Brandt, Williams & Shaw LLP, Prairie Village, KS, for Defendant.

Monte R. Swanzy, Dallas, TX, pro se.

Stephen P. Swanzy, Dallas, TX, pro se.

Patricia Swanzy, Dallas, TX, pro se.

Kenneth L. Weltz, Lathrop & Gage, LC, Overland Park, KS, Brian M. Holland, Lathrop & Gage, Kansas City, MO, for Receiver.

Terry L. Unruh, Grace, Unruh & Pratt, L.C., Wichita, KS, for Intervenor.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE

SEBELIUS, United States Magistrate Judge.

This matter comes before the Court upon the Motion to Intervene filed by Movant E. Paul Anderton ("Anderton") on April 21, 2004 (Doc. 63). The plaintiff has filed its opposition Anderton's motion (Doc. 69), and Anderton filed his Reply (Doc. 82). Anderton seeks to intervene in the underlying action brought by the Securities and Exchange Commission (the "S.E.C." or the "Commission") to protest the inclusion of his investment in the assets collected by the Receiver (the "Receivership Assets") and to assert priority over the distribution of that investment. On June 1, 2004, the Court held a motion hearing on Anderton's motion to intervene. At the motion hearing, the movant appeared through Gilbert Guthrie and Terry Unruh, the plaintiff appeared through Timothy Davis, and the Receiver appeared through Kenneth Weltz. The Court has reviewed the parties' arguments and is now prepared to rule.

### I. Relevant Factual Background

On January 23, 2004, the S.E.C. brought this enforcement action against Defendants Kings Real Estate Investment Trust ("Kings REIT"), Reliance Enterprises, L.L.C., Monte R. Swanzy, Stephen P. Swanzy, David L. Knudson, Van E. Brighton, Individually and d/b/a Brighton Funding Group (collectively, "Defendants"), and Relief Defendants Brighton Enterprises, Inc., Romerian Spendthrift Trust, and Patricia Swanzy (collectively, "Relief Defendants") (Doc. 1). S.E.C. alleges that defendants Monte and Stephen Swanzy, together with defendants David Knudson and Van Brighton, fraudulently offered and sold Kings REIT securities through various Defendant and Relief Defendant entities. The SEC claims that defendants have defrauded

investors of $2.9 million.[1] There appear to have been a number of investors in Kings REIT, including 18 investors from Kansas, although the exact number has not been specified in any pleading or hearing to date. Investors were told that their investments would be pooled into real estate trusts to finance real estate ventures and promised high returns on their investments and absolute security for the principal invested. It appears that the investors understood that they were investing in Kings REIT, rather than any other entity.

On January 23, 2004, Judge Rogers appointed Larry Cook as Receiver for the Receivership Assets (Doc. 8). In paragraph 9 of the Order Appointing Receiver, Judge Rogers ruled that

> [t]his Order does not prohibit the prosecution of any civil action or other proceeding against Defendants or Relief Defendants, including non-dischargeability proceedings and enforcement of any judgments obtained in such actions or proceedings, or effect the release of any claim asserted therein. However, to the extent judgment creditors or other claimants seek to prosecute an action or proceeding against the Defendants or Relief Defendants or to satisfy a judgment or claim from Receivership Assets, they will do so only with the prior permission of this Court or the United States Bankruptcy Court and in accordance with an order of priority established by a plan of liquidation and distribution, or any authority or other stay provided under the Bankruptcy Court.[2]

On February 2, 2004, Judge Rogers entered an Order of Preliminary Injunction as to Kings REIT, Monte, Stephen and Patricia Swanzy, and Romerian Spendthrift Trust, freezing assets, requiring accounting, prohibiting destruction and alteration of documents, and requiring repatriation of funds and assets.[3] As of June 1, 2004, approximately $2.1 million has been recovered by the Receiver.[4]

On April 21, 2004, Paul Anderton, through his attorney Gilbert Guthrie, filed a motion to intervene in this action (Doc. 63). In support of his motion to intervene, Anderton argues that he is not similarly situated to other investors in Kings REIT and that no other party to this current lawsuit adequately represents his interests. Anderton claims he invested $1 million in Romerian Spendthrift Trust in a side investment agreement between himself and Monte Swanzy. Anderton states he did not invest in Kings REIT. Anderton asserts that he is entitled to priority for his $1 million investment and that this investment, which is now in the possession of the Receiver, can be easily traced to the bank account in which he deposited it.[5] In his Intervenor Complaint, Anderton seeks to recover his $1 million from the Receiver (Count I), requests declaratory judgment in his favor as to his rights in the $1 million invested (Count II), and alleges breach of contract by Monte Swanzy, individually and on behalf of Romerian Spendthrift Trust, for investing/transferring his funds from the Romerian Spendthrift Trust account without his approval (Count III). Anderton's claim appears to be the largest individual investment; second largest appears to be an investment by a Kansas woman in the amount of $250,000. The S.E.C. opposes Anderton's motion to intervene on the grounds that there is an "impenetrable wall" to intervention under 15 U.S.C. § 78u(g) ("Section 21(g)"), and that allowing intervention would require extension of discovery and unnecessarily complicate this action. The S.E.C. places particular emphasis on Anderton's attempt to enlarge the action by adding a breach of contract claim against Monte

---

1. The original Complaint states that the amount at issue was $1.9 million, but subsequent investigation revealed an additional investment of $1 million (*See* Transcript of Motion Hearing held on February 2, 2004, Doc. 51 at p. 57).

2. Doc. 8, pp. 5–6.

3. Doc. 22.

4. Receiver's Second Report (Doc. 84).

5. During the telephone hearing on the motion to intervene conducted by the Court, Anderton's attorney, Mr. Guthrie, stated that all of Anderton's investment was transferred into the bank account in question and none of it was transferred out until the receivership went into effect.

Swanzy and Romerian Spendthrift Trust.[6] The S.E.C. argues that, despite his claim to the contrary, Anderton's interests will not be impaired and are adequately represented by the existing parties to the lawsuit. Both the S.E.C. and the Receiver have represented to the Court that Anderton is not precluded from asserting his claim at a later date, prior to the Receivership Assets being distributed.[7]

## II.  Discussion

### 1.  Section 21(g)

The main thrust behind the S.E.C.'s opposition to Anderton's intervention is that, absent the Commission's consent, any intervention in an S.E.C. enforcement action is absolutely barred by Section 21(g). In support of its position, the S.E.C. relies mainly on an unpublished 1993 Northern District of Illinois case, holding that Section 21(g) represents an "impenetrable wall" to intervention.[8] Anderton objects to the S.E.C.'s characterization of Section 21(g) as an impenetrable wall to intervention by pointing to a number of cases, including an Eighth Circuit decision, that reject the position advanced by the S.E.C., holding instead that Section 21(g) does not automatically preclude all intervention in S.E.C. enforcement actions.[9]

The positions taken by the parties on the issue of intervention preclusion mirrors the split among the courts concerning the application of Section 21(g) to intervention motions. Only one circuit court appears to have resolved this question and the district courts across the country have arrived at differing interpretations of the statutory language. Neither the Tenth Circuit nor the District Court for the District of Kansas appear to have ever addressed this issue before. Absent controlling authority, and in the face of contradictory opinions from other jurisdictions, the Court must make its own determination on the applicability of Section 21(g) to motions to intervene in S.E.C. enforcement actions.

■  Section 21(g) states as follows:

Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be *consolidated* or *coordinated* with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.[10]

The language of Section 21(g) prohibits "consolidation" and "coordination" of other actions brought by third parties with an action for equitable relief instituted by the Commission without its express agreement. Section 21(g) does not, by its plain language, prohibit intervention. Nor does the review of the Congressional history suggest that prohibiting intervention was the goal behind the passage of this section. Congress enacted Section 21(g) in response to the S.E.C.'s concern that its enforcement actions were being hindered by the consolidation provisions governing multidistrict litigation under 28 U.S.C. § 1407. "[Section 21(g)] would ... exempt law enforcement actions brought by the Commission from the operation of the judicial procedures provided by the Congress in 1968 to transfer, for coordinated or consolidated pretrial procedures, civil actions pending in different judicial districts that have

---

6.  In his reply to S.E.C.'s response to this motion to intervene, Anderton offers to withdraw the breach of contract claim in the event the Court finds it would unnecessarily complicate the litigation.

7.  The parties are in agreement that Anderton has filed an administrative claim with the Receiver.

8.  *S.E.C. v. Wozniak*, 1993 WL 34702, at *1, 1993 U.S. Dist. LEXIS 1241 at *1 (N.D.Ill. Feb. 5, 1993).

9.  *S.E.C. v. Fligh Trans. Corp.*, 699 F.2d 943, 950 (8th Cir.1983) (rejecting Section 21(g) as bar to intervention in S.E.C. enforcement actions), *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466 (S.D.N.Y.2000), (rejecting Section 21(g) as absolute bar to intervention), *S.E.C. v. Prudential Sec. Inc.*, 171 F.R.D. 1, 4 (D.D.C.1997) (rejecting Section 21(g) as a bar to non-consensual intervention in certain S.E.C. actions),

10.  15 U.S.C. § 78u(g) (emphasis added).

one or more common questions of fact." [11] The Senate report pointed out that multidistrict litigation rules compelling consolidation of civil cases were particularly harmful in the context of injunctive enforcement suits by the Commission because the delay associated with a complex pretrial phase of a consolidated suit interfered with the Commission's ability to enjoin the potentially fraudulent conduct, leading to further fraudulent acts and new losses to investors. "The Committee feels that when Commission injunctive actions are subject to being transferred for coordinated or consolidated pretrial proceedings, delay in the prosecution of the Commission action may ensue which is potentially damaging to the public interest in securing prompt relief from illegal practices and preventing such practices in the future." [12]

In the course of its discussion of the proposed legislation, the U.S. Senate addressed the difference between the injunctive action brought by the Commission and a private plaintiff's action for damages. "Private actions frequently will involve more parties and more issues than the Commission's enforcement action, thus greatly increasing the need for extensive pretrial discovery. In particular, issues related to matters of damages, such as scienter, causation, and the extent of damages, are elements not required to be demonstrated in a Commission injunctive action." [13] However, the Senate's discussion of the differences between private suits for damages and Commission enforcement actions appears to be grounded in its overall concern about the delay occasioned by applying multidistrict rules to SEC actions. "Private plaintiffs seeking only money damages lack the same incentive to hasten pretrial proceedings which the Commission is required to have." [14] Throughout the text of the Senate's report, the comments return to the hardship imposed on the Commission by the rules governing coordination of cases under 28 U.S.C. section 1407, including lengthy time frames associated with the consolidation process itself. At the same time, with the exception of the general observations about the differences between private individual suits and Commission's actions, the report does not seem to embrace a wider prohibition on all intervention. In fact, the report itself acknowledges that the objectives of private civil suits are "really, very different," from those of the Commission, which would argue in favor of allowing intervention.

When read in its entirety, the Senate report supports the conclusion that Section 21(g) was designed to safeguard S.E.C. enforcement actions against the application of multidistrict litigation rules, rather than to preclude all intervention in such cases. It is notable that not only is intervention not mentioned in the statute, no reference to intervention or Fed.R.Civ.P. 24 is made in the Congressional history. Therefore, the Court concludes that Section 21(g) does not serve as an impenetrable wall to intervention.

This reading is supported by the Eighth Circuit decision in *S.E.C. v. Flight Transportation:* "[t]he purpose of the subsection is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. It does not say that no one may intervene in an action brought by the SEC without its consent. It does not mention Fed. R.Civ.P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC." [15] In that case, in reversing the lower court's denial of a motion to intervene, the court found that a creditor with an unliquidated claim in the company charged in an S.E.C. enforcement action could intervene.

A number of district courts have followed the Eighth Circuit in holding that Section 21(g) does not automatically preclude intervention in S.E.C. enforcement actions. In *S.E.C. v. Prudential Securities Inc.,* the court found that Section 21(g) did not bar intervention by investors during the imple-

---

**11.** S.Rep. No. 94–74, at 73 (1975), 1975 U.S.C.C.A.N. 179, 251.

**12.** *Id.* at 77.

**13.** *Id.* at 46, citing *S.E.C. v. Everest Management Corporation,* 475 F.2d 1236, 1240 (2d Cir.1972).

**14.** *Id.* at 77.

**15.** 699 F.2d at 950.

mentation of the consent decree. While the facts of *Prudential Securities* are clearly distinguishable from the present case, where the litigation is just beginning, the court in that case unequivocally stated that "[t]here is no persuasive authority which suggests that Section 21(g) ... bars *intervention* in all S.E.C. enforcement actions." [16]

In *S.E.C. v. Credit Bancorp, Ltd.*, the court granted a motion to intervene by defrauded investors in an S.E.C. enforcement action. The facts of *Credit Bancorp* are remarkably similar to the facts in this case. In *Credit Bancorp*, the S.E.C. initiated an enforcement action against certain individual and entity defendants for violation of the securities laws. Immediately after filing the complaint, the S.E.C. moved for a temporary restraining order and asset freeze, preventing the defendants from dissipating the assets and continuing to engage in the allegedly fraudulent activities. The S.E.C. also secured appointment of a receiver. The order appointing receiver stipulated that " '[t]he Receiver shall not return to Credit Bancorp customers any securities or other assets deposited with Credit Bancorp or into an account in the name of Credit Bancorp or any dividends, interest, or other income or profits earned thereon or the proceeds from the sale of any securities or assets without further Order of this Court upon notice to all customers.' " [17] Some investors moved for the return of stock and the distribution of cash dividends made subject to the order appointing receiver and to intervene in the action generally. [18] In support of their motion to intervene, investors claimed that

(1) they have significant interests in the (limited) assets at issue in this litigation; (2) their interests in the assets currently frozen may be impaired depending on the outcome of the instant action; (3) the SEC is an inadequate representative, given that

its goals and interests are not aligned with those of individual Credit Bancorp customers; [and] (4) that allowing intervention would not delay resolution of this action, insofar as the SEC's discrete claims are concerned, and that the addition of the intervenors' claims will not unduly complicate matters. [19]

The S.E.C. opposed the intervention, inter alia, on the basis that Section 21(g) bars such intervention without the S.E.C.'s consent. The court, after a thorough review of caselaw and of the legislative history of Section 21(g), found that "[g]iven that the language on Section 21(g) does not specifically prohibit intervention in S.E.C. enforcement actions, and the persuasive reasoning of those cases that have rejected Section 21(g) as an absolute bar to intervention, Section 21(g) does not bar intervention in this case." [20]

In contrast to the cases cited above, some courts continue to adhere to the rationale announced by the district court in *Wozniak* that Section 21(g) serves as an impenetrable wall to intervention. In *Wozniak*, the S.E.C. filed an action against individual and corporate defendants for violations for securities laws. An individual investor in the allegedly fraudulent scheme moved for intervention. The S.E.C. objected, and the court denied intervention, finding that the language of Section 21(g) clearly prohibited such action in light of the S.E.C.'s objections. [21] Similarly, in *S.E.C. v. Homa*, the court denied intervention by a creditor of the defendant in an S.E.C. enforcement action. [22] The court held that because "the language of Section 21(g) is plain and unambiguous," it must be given effect to preclude intervention. [23] In *S.E.C. v. Qualified Pensions, Inc.*, the court denied intervention by former customers of the defendant when such intervention would have resulted in the consolidation of the S.E.C.

---

**16.** 171 F.R.D. at 3 (emphasis in original).

**17.** 194 F.R.D. at 460.

**18.** Motion for the return of investment was denied by the court.

**19.** 194 F.R.D. at 465.

**20.** 194 F.R.D. at 466.

**21.** *Wozniak*, 1993 WL 34702 at *1, 1993 U.S.Dist. LEXIS at *2.

**22.** 2000 WL 1468726 (N.D.Ill. Sept. 29, 2000).

**23.** Id. at *2.

enforcement action with a pending state court suit.[24]

The courts holding that Section 21(g) bars intervention assert that this result is reached on the basis of the "plain meaning" of that provision.[25]  These courts suggest that their reading of the statute is supported by the Supreme Court decision in *Parklane Hosiery Co. v. Shore*[26] and Justice Blackmun's dissenting opinion in *Aaron v. S.E.C.*[27], the only two Supreme Court decisions that mention Section 21(g).  However, it appears that the only thing the Supreme Court was confirming was that Section 21(g) does not permit "consolidation" or "coordination" of S.E.C. enforcement actions with private suits.[28]  Neither decision elaborates any further on the statutory language.  Therefore, it is unclear how either of the Supreme Court's cases supports the position that Section 21(g) is clearly and unambiguously meant to be an absolute bar to intervention.[29]  With the exception of *Qualified Pensions*, where intervention would have literally led to a consolidation of a federal S.E.C. claim with another pending suit, neither *Wozniak* nor *Homa* present facts that would lead to such consolidation with a private lawsuit.

■  In the instant case, Anderton has no lawsuit pending anywhere.  In fact, pursuant to the terms of Judge Rogers' Order Appointing Receiver, the only place where Anderton would be allowed to bring suit against the Receiver would be in this Court.[30]  Therefore, there is no suit with which this enforcement action may be consolidated or coordinated.

Furthermore, at the outset of this case the Commission obtained an *ex parte* temporary restraining order, which enjoined all participation in allegedly fraudulent activities and froze all of Defendants' and Relief Defendants' assets.[31]  This temporary restraining order was later replaced by an order of preliminary injunction, which continued the terms of the temporary restraining order with respect to defendants Monte R. Swanzy, Stephen P. Swanzy, and Kings REIT, and relief defendants Romerian Spendthrift Trust and Patricia Swanzy.[32]  Agreed preliminary injunction orders were entered with respect to defendants Van E. Brighton and Brighton Enterprises, Inc.,[33] and David L. Knudson and Reliance Enterprises L.L.C.[34]  Because the S.E.C. has secured injunctive relief against all Defendants and Relief Defendants immediately upon filing of this lawsuit, the primary concern of the United States Congress that led to the enactment of Section 21(g) is no longer implicated in this case.  Even if intervention is allowed, no amount of additional discovery or litigation would permit the defendants or relief defendants to engage in further fraudulent conduct.

The Court concludes that Section 21(g) does not represent an impenetrable wall to

---

**24.**  1998 WL 29496, 1998 U.S. Dist. LEXIS 942 (D.D.C. January 16, 1998).

**25.**  *Wozniak*, 1993 WL 34702, at *1, 1993 U.S.Dist. LEXIS at *2, *Homa*, 2000 WL 1468726 at *2.

**26.**  439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**27.**  446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

**28.**  *Parklane Hosiery*, 439 U.S. at 332, n. 17, 99 S.Ct. 645 ("[C]onsolidation of a private action with one brought by the SEC without its consent is prohibited by statute."), *citing* 15 U.S.C. § 78u(g); *Aaron*, 446 U.S. at 718, n. 9, 100 S.Ct. 1945 (Blackmun, J., dissenting).

**29.**  The Eighth Circuit explained in *Flight Transportation* that intervention in *Parklane* would not have been permissible based on the facts of that case and that the decision should not be viewed as endorsing the view that Section 21(g) is an automatic bar to intervention in an SEC enforcement action.  699 F.2d at 950.

**30.**  While the terms of the Order Appointing Receiver also suggest that Anderton may not, absent an approval of this Court, bring any suit against any of the named defendants, both the S.E.C. and the Receiver have represented to the Court that this reading does not reflect the intention of the provision in the Order and that Anderton would be free to sue the individual defendants in a separate action.

**31.**  Doc. 9.

**32.**  Doc. 22.

**33.**  Doc. 23.

**34.**  Doc. 24.

intervention in the instant case. The holding in *Wozniak* notwithstanding, the Court finds no support for the proposition that the Congress, by including only the words "coordinate" and "consolidate" in the language of Section 21(g), meant for that provision to apply to all possible interventions in S.E.C. enforcement actions. As noted above, "there is no persuasive authority which suggests that [S]ection 21(g) ... bars intervention in all SEC enforcement actions." [35] Where, as is the case here, the primary concern behind the passage of Section 21(g) is not implicated, and given the plain language of that section, which does not prohibit intervention, the Court finds intervention is not precluded under Section 21(g). Therefore, the Court must proceed to examine whether intervention may be appropriate under Fed.R.Civ.P. 24.

### 2. Intervention of Right under Fed. R.Civ.P. 24(a)

In his motion to intervene, Anderton claims that he should be allowed to intervene because he claims an "interest relating the property or transactions which are the subject of this action and is so situated that the disposition of the action will impair or impede his ability to protect that interest, which is not fully protected by the Receiver." [36] Therefore, states Anderton, he is entitled to intervention as a matter of right under Fed.R.Civ.P. 24(a). The S.E.C. argues that Anderton does not qualify for intervention under Rule 24(a) because Anderton's interests will not be impaired if he were denied intervention.

Fed.R.Civ.P. 24(a)(2) states as follows:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is

the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervention of right under Rule 24(a)(2) is permitted if "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties." [37] All elements must be satisfied before an applicant can intervene as of right under Rule 24(a)(2).[38]

The parties in this case do not appear to dispute that Anderton's application is timely or that he has an interest relating to property or transaction at issue in the S.E.C.'s action. There does appear to be some dispute over whether the third element is satisfied. In his reply, Anderton states that "S.E.C. apparently concedes that the first three elements of [Rule 24(a)(2) ] are met (timeliness, interest in the action, and potential impairment of that interest), as no response to those is argued." [39] Anderton then proceeds to argue that the only element in dispute is the adequacy of his representation by the current parties. The Court does not agree with this reading of the plaintiff's response. In fact, the Court views the S.E.C.'s argument to be centered primarily on the point that Anderton's interests will not be impaired and, therefore, intervention as of right is not warranted.

■ After a thorough review of the parties' arguments, the Court finds that Anderton is not entitled to intervention as of right because he fails to demonstrate that, as a

---

**35.** *Prudential Securities,* 171 F.R.D. at 3.

**36.** Anderton's Motion to Intervene and Supporting Memorandum, p. 3 (Doc. 63).

**37.** *Ute v. Distrib. Corp. v. Norton,* 43 Fed.Appx. 272, 275 (10th Cir.2002), citing *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior,* 100 F.3d 837, 840 (10th Cir.1996) (internal quotations omitted).

**38.** *Pacific Mut. Life Ins. Co. v. American Nat'l Bank & Trust Co.,* 110 F.R.D. 272, at 274 (N.D.Il. 1986) ("For intervention to be allowed, each element must be satisfied."), *citing United States v. 36.96 Acres of Land,* 754 F.2d 855, 858 (7th Cir.1985).

**39.** Reply in Support of Motion to Intervene and Supporting Memorandum, p. 6 (Doc. 82).

practical matter, absent intervention his interests may be impaired or impeded by the disposition of the Commission's action. As the S.E.C. points out in its response, the Order Appointing Receiver directs the receiver to collect and preserve the Receivership Assets. These assets may only be distributed to the defrauded investors by the Receiver upon notice and application to the Court. From the parties' arguments during the hearing conducted by the Court on the instant motion, it appears that once all the Receivership Assets are collected, the Receiver will make an application to the Court to distribute the funds in the manner the Receiver deems just. When that application is made to the Court, any investor will be allowed to present their arguments for deviation from the proposed distribution plan.

The Court finds that the claims procedure established by the Receiver would provide Anderton sufficient protection by allowing him to assert all his claims, including his claim for priority, at a later date. This conclusion is supported by a number of cases. For example, in *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.,* the Tenth Circuit affirmed the district court's determination that denying the intervenor's motion to intervene under Rule 24(a) was appropriate where such intervenor was "not being foreclosed from asserting his claim, including his suggestion that his claim was entitled to priority, under the claims procedure set up by the Receiver." [40] Anderton himself acknowledges that, should he not be permitted to intervene in this case, he will present his claims at a later time by objecting to the Receiver's proposed plan of distribution.[41] To that end, he has already filed a Claim for Payment, in which he asserts his right to the priority payment of the entire $1 million invested with Romerian Spendthrift Trust.[42] Furthermore, during the telephone hearing conducted by the Court, the parties acknowledged that Anderton could pursue his claims against defendant Monte Swanzy and relief defendant Romerian Spendthrift Trust in another action.[43]

The Court finds that the third prong of the test for intervention under Rule 24(a)(2) is not satisfied. If not permitted to intervene, Anderton's interests will still be adequately protected because his claim against the Receiver will not be resolved until after Anderton has had an opportunity to object to the asset distribution, and his claims against Monte Swanzy and Romerian Spendthrift Trust may be pursued in another action. Where one of the four elements necessary under Rule 24(a)(2) is not met, intervention as of right is not warranted.

While the Court must deny intervention to Anderton under Section 24(a) because he has not demonstrated that the disposition of the S.E.C.'s enforcement action will impair or impede his ability to protect his interest in his investment, the Court notes that Anderton may be correct in claiming that nobody in the current action adequately represents his interests. As Anderton points out in his reply, the S.E.C. has not named a party to the current lawsuit who adequately represents his interests.

The Court is inclined to agree with Anderton's position that in fact no existing party

---

40. 725 F.2d 584, 586 (10th Cir.1984). *See also CFTC v. Heritage Capital Advisory Servs.,* 736 F.2d 384, 386–87 (7th Cir.1984) (Affirming district court's denial of motion to intervene of an applicant who had already filed its priority claim with the receiver because its interest was protected through participation in a receiver's claim proceeding.), *Credit Bancorp,* 194 F.R.D. at 467 (Finding that intervention as of right is not applicable where the intervenor has an opportunity to present his claims to a receiver). *But see Flight Transportation,* 699 F.2d at 948 (Reversing the district court's determination that intervention as of right by several creditors is inappropriate, in part because the proposed intervenors' interests in collecting on a judgment could be impaired by the outcome of the enforcement proceedings.).

41. Motion to Intervene and Supporting Memorandum, p. 2 (Doc. 63).

42. Attachment 1 to Anderton's Reply in Support of Motion to Intervene and Supporting Memorandum (Doc. 82).

43. While this position appears inconsistent with paragraph 9 of the Order Appointing Receiver, counsel for the S.E.C. who prepared that order affirmatively stated during the telephone conference with this Court that this was the intended meaning of that provision.

adequately represents his interests. The S.E.C.'s primary concern is with stopping ongoing fraudulent activities and with preventing future fraud by the defendants. This goal, while not inconsistent with Anderton's goal of protecting himself from fraud, does not necessarily mean that the S.E.C. adequately represents Anderton in this particular matter. Similarly, while the Receiver is concerned with retrieving all the assets it can from the Defendants and maximizing distribution to the investors—a goal not inconsistent with Anderton's plight to get his $1 million back—it is unable to represent each investor adequately where, as here, the assets collected are less than the funds initially invested. Therefore, the Receiver, in advocating for a proportionate distribution, assumes a position adverse to any investor who argues for 100% return of his investment. Neither the S.E.C. nor the Receiver thus align themselves with any individual investor. As the court found in *Credit Bancorp,*

> [t]he Receiver at once represents the interests of all and none of Credit Bancorp's customers, given the problem of collective action presented by the facts of this case. To the extent that the Receiver has the interests of all in mind, he is the adversary of the individual customer—whose concern is only for the return of his deposits.[44] ...
> [T]he SEC's interests in this action are not coextensive with those of individual Credit Bancorp customers. The SEC's interests lie in enforcing the securities laws, protecting the public from frauds, and ensuring that Credit Bancorp customers as a whole recover their due. Like the Receiver, the SEC's broader mission may well mean that it will take positions hostile to those of individual investors.[45]

Because the Court found above that Anderton's interests are not impaired and may be asserted through the claims procedure set up by the Receiver, the Court's view that neither the S.E.C. nor the Receiver adequately represent his interests does not preclude the ultimate conclusion that intervention as of right under Rule 24(a) is not appropriate in this matter.

### 3. Permissive Intervention under Rule 24(b)

■ As an alternative to intervention as of right, Anderton argues that he should be allowed to intervene under Rule 24(b) because "there is a common question of law or fact that pertains to his claims and those of Plaintiff regarding ownership or interest in the funds he claims."[46] The S.E.C., without responding directly to Anderton's contention that permissive intervention is appropriate, argues against it on the basis that allowing intervention will result in unnecessary delay to this litigation.

Fed.R.Civ.P. 24(b)(2) states as follows:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In the Intervenor's Complaint attached to the motion to intervene, Anderton raised two claims against the Receiver and a claim for breach of contract against Monte Swanzy and the Romerian Spendthrift Trust.[47] In response to the S.E.C.'s concern that the case would be unduly burdened by the addition of Anderton's breach of contract claim, Anderton proposed to withdraw his claim against Mote Swanzy and Romerian Spendthrift Trust and to proceed solely on his claims against the Receiver.[48] As Anderton explains in his reply, he sought to bring his individual breach of contract claim in this proceeding only because the language in the Order Appointing the Receiver suggested

---

44. 194 F.R.D. at 461.

45. *Id.* at 467.

46. Motion to Intervene and Supporting Memorandum, p. 3 (Doc. 63).

47. Intervenor's Complaint, Attachment 1 to Motion to Intervene and Supporting Memorandum, pp. 3–5 (Doc. 63).

48. Reply in Support of Motion to Intervene and Supporting Memorandum, p. 10 (Doc. 82).

that the approval of this Court was necessary for any action against any of the named Defendants or Relief Defendants. In light of the S.E.C.'s clarification during the hearing that barring all suits against all Defendants or Relief Defendants was not the intention of that Order, Anderton reiterated his position that he can withdraw the claim against Monte Swanzy and the Romerian Spendthrift Trust and seek intervention only on his claims against the Receiver. Therefore, the remaining question before this Court is whether Anderton should be allowed to intervene under Rule 24(b) to assert his claims against the Receiver.

As noted above, intervention under Rule 24(b)(2) may be allowed where the applicant has demonstrated that his claim or defense and the main action have a question of law or fact in common. Even where this requirement is met, the court has discretion to deny intervention if the intervention would unduly delay or prejudice the main case. This discretion is considerable.[49]

There is no question that Anderton's claim that he did not invest in Kings REIT and that he is entitled to priority on his $1 million investment in the Romerian Spendthrift Trust has questions of law and fact in common with the S.E.C.'s allegations of fraud against the Defendants, including the relief defendant Romerian Spendthrift Trust. The Court may, therefore, permit intervention under Rule 24(b)(2) if the inclusion of Anderton's claims would not unduly delay or prejudice the main case. In its opposition to Anderton's motion, the S.E.C. argues that the intervention will unnecessarily delay the disposition of this case because "[p]revious discovery requests would need to be expanded, depositions re-taken, agreed scheduling orders re-negotiated, and proposed settlements re-thought."[50] In addition to this delay, the S.E.C. also claims that the ultimate recovery to all defrauded investors would be reduced because the Receivership Assets would have to be expended for the purpose of defending against Anderton's claims. In his reply, Anderton takes issue with the Commission's assertion that his intervention would result in unnecessary delay in the disposition of the action or that the drastic measures described by the S.E.C. would be required. Anderton argues that, once his breach of contract claim is eliminated, additional discovery he would have to undertake would be minimal if he has access to the discovery conducted by the S.E.C. and the Receiver.

In *Credit Bancorp*, the court allowed intervention under Rule 24(b)(2) to Credit Bancorp investors who claimed "vital interest" in the assets controlled by the Receiver in that case. In that case, the S.E.C. argued that while the proposed intervenors were few, the potential intervenor pool was approximately 200 investors, and intervention on such scale would be too burdensome. The court did not address whether intervention from 200 investors would be too burdensome, but did hold that the applicants who actually filed the motion to intervene will be allowed to do so under Rule 24(b)(2). The court rejected the S.E.C.'s argument that allowing intervention would make the case more burdensome because it found that the "proposed intervenors are likely to have extensive participation in this case whether or not intervention is allowed. . . ."[51] In the end, the court found that intervention was the "fairest and most efficient" method of handling the case before it.[52]

By contrast, intervention under Rule 24(b)(2) was denied in *S.E.C. v. TLC Invest-*

---

**49.** *Mountain Solutions v. State Corp. Comm'n,* 966 F.Supp. 1043, 1045 (D.Kan.1997) ("The decision to order intervention under Rule 24(b)(2) is a matter within the court's sound discretion."), *citing City of Stilwell v. Ozarks Rural Elec. Coop. Corp.,* 79 F.3d 1038, 1043 (10th Cir.1996); *see also United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990) ("[P]ermissive intervention is a matter within the sound discretion of the district court, and [the Appeals Court] will not disturb [the district court's] order except upon a 'showing of clear abuse.' "), *quot-*

*ing Shump v. Balka,* 574 F.2d 1341, 1345 (10th Cir.1978).

**50.** Plaintiff's Response to Motion to Intervene By E. Paul Anderton and Supporting Memorandum, p. 7 (Doc. 69).

**51.** 194 F.R.D. at 468.

**52.** *Id.* at 469.

ments and Trade Co., et. al.[53] and in *S.E.C. v. Everest Management Corp., et. al.*[54] because in both cases the courts concluded that it would unduly delay S.E.C.'s litigation. In *TLC Investments,* applicants sought to add the claims of 700 individual plaintiffs to the S.E.C. enforcement action, and to assert additional securities causes of action and state law claims. The court found that allowing such intervention would interfere with the "relatively quick schedule" established in the case and that a trial involving 700 individual claims would be "much more extensive" than an S.E.C. enforcement trial.[55] In *Everest Management Corp,* the Second Circuit Court of Appeals upheld the district court's denial of permissive intervention to applicants who sought to intervene in 3 out of 45 counts brought by the S.E.C. to assert claims against 7 out of 44 defendants. The proposed intervenors' complaint sought money damages in the amount of $6 million based on alleged violations of various antifraud provisions of securities laws and based also on a claim for breach of fiduciary obligations and fraud. The Second Circuit found that, while it may be more efficient to allow private parties to join in S.E.C. enforcement actions, in the case before it, the "complicating effects of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues."[56]

The concerns that caused the courts in *TLC Investments* and *Everest Management* to reject intervention are not present in the instant case. Before the Court is a motion for intervention by one applicant asserting a claim that is closely intertwined with the claims in the main enforcement action by the S.E.C. Discovery and, if necessary, trial will still be centered mostly on the S.E.C.'s claims against the Defendants and the Relief Defendants, with Anderton engaging only to the extent necessary to demonstrate that his investment was not part of the same scheme to defraud and that his investment should not be part of the Receivership Assets. Because Anderton no longer seeks to assert the claim of breach of contract against two individual defendants, there is no issue of private damages.

The Court does not agree with the S.E.C.'s contention that allowing intervention in this case will unduly delay discovery. In accordance with the Scheduling Order entered on May 26, 2004,[57] discovery in this case must be completed by October 20, 2004, which leaves the parties almost four months to engage in further fact-finding.[58] To the extent that the S.E.C. is engaged in active settlement negotiations with some Defendants and Relief Defendants, the Court does not see how the intervention will have any impact on those negotiations. Anderton's claims do not concern the Defendants for whom settlement offers have been submitted. Rather than viewing this intervention as a hindrance to its enforcement efforts, the S.E.C. should regard it as a possible aid in discovery exactly how many fraudulent schemes were perpetrated allegedly by the Defendants. Similarly, the Receiver should view the intervention as a possibility to fully discover the proper distribution of the recaptured assets. The Court believes the goal of the Receiver should be to distribute the funds in the fairest manner, even if that means Anderton receives a priority to his investment should the fact reveal that he is entitled to as much, not in the easiest manner.

As the court in *Credit Bancorp* stated, Rule 24(b)(2) gives a district court discretion to determine "the *fairest* and the most efficient method of handling a case with multiple parties...."[59] The Court finds that in the

---

53. 147 F.Supp.2d 1031 (C.D.Cal.2001)

54. 475 F.2d 1236.

55. 147 F.Supp.2d at 1043.

56. 475 F.2d at 1240 (The court cited damages as an example of the type of additional issue that would unduly complicate the matter because "a private party seeking damages would have to prove scienter and causation, elements of proof not required in an SEC injunction action.").

57. Doc. 83.

58. It is worth noting that some of the Defendants and Relief Defendants have not yet answered and, therefore, discovery may have to be extended even in the absence of intervention.

59. 194 F.R.D. at 469.

instant case, the fairest and most efficient method of handling this litigation is by allowing Anderton to intervene. Therefore, given the broad discretion given to the courts under Rule 24(b)(2), intervention is appropriate.

### 4. Intervention Conditions

When a court allows intervention under Rule 24(b)(2), it has discretion to set whatever conditions it deems necessary to ensure that additional discovery is conducted efficiently and that the resolution of the case is not unduly delayed as a result of the intervention.[60]

In accordance with its power to impose conditions upon permissive intervention, the Court's order allowing Anderton to intervene is conditioned upon the following: (1) Anderton is limited in the conduct of his discovery to matters related to the tracing of the funds deposited by him with the Romerian Spendthrift Trust and to his claim of priority to those funds vis-a-vis other investors defrauded by the Defendants and the Relief Defendants; (2) all discovery, including any discovery related to Anderton's claim, must be served in time to be completed by the October 20, 2004 deadline set forth in the Scheduling Order entered on May 26, 2004; (3) to the extent necessary to discover the facts related to his claim for priority or to trace the funds in question, Anderton may participate in the depositions of the original parties to this action and may initiate up to five (5) depositions himself; and (4) to the extent necessary to discover the facts related to his claim for priority or to trace the funds in question, Anderton may serve up to fifteen (15) interrogatories to any party.

**IT IS THEREFORE ORDERED** that the motion to intervene filed by movant E. Paul Anderton (Doc. 63) with respect to Anderton's claims against the Receiver, as stated in Counts I and II of his proposed Intervenor Complaint, is granted.

**IT IS FURTHER ORDERED** that the motion to intervene filed by movant E. Paul Anderton (Doc. 63) with respect to Anderton's claim against defendant Monte Swanzy and relief defendant Romerian Spendthrift Trust is denied as moot.

**IT IS FURTHER ORDERED** that on or before **July 9, 2004,** Anderton is directed to file an amended Intervenor Complaint with this Court deleting any claim against defendant Monte Swanzy and relief defendant Romerian Spendthrift Trust.

---

60. *Beauregard, Inc. v. Sword Services, L.L.C.,* 107 F.3d 351, 352 n. 2 (5th Cir.1997) ("It is undisputed that virtually any condition may be attached to a grant of permissive intervention."), *citing Fox v. Glickman Corp.,* 355 F.2d 161, 164 (2d Cir.1965) (Noting that conditioning a grant of intervention on compliance with pretrial orders already made is permissible). *See also* 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1922 (1986) ("Since the court has discretion to refuse intervention altogether, it also may specify the conditions on which it will allow the applicant to become a party.").